## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**STEVEN POWELL,**
     **Petitioner,**

**v.**                         **Case No.  3:07cv147/MCR/MD**

**WALTER A. MCNEIL,[1]**
     **Respondent.**

---

### ORDER and
### REPORT AND RECOMMENDATION

     **Before the court is an amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  (Doc. 13).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 16).  Petitioner filed a reply, which he later supplemented.  (Docs. 23, 25).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.**

---

[1]**Walter A. McNeil succeeded James R. McDonough as Secretary of the Florida Department of Corrections, and is automatically substituted as the respondent.  Fed.R.Civ.P. 25(d)(1).**

## BACKGROUND AND PROCEDURAL HISTORY

On January 14, 2003, petitioner was charged by information filed in the Circuit Court of Escambia County, Florida, case number 03-22, with one count of Aggravated Battery upon a Law Enforcement Officer (Florida Highway Patrol Trooper Larry Wright) (Count 1), one count of Driving While License Revoked as a Habitual Traffic Offender (Count 2), one count of Fleeing or Attempting to Elude a Law Enforcement Officer in an Agency Vehicle with Siren and Lights Activated at High Speed (Count 3), and one count of Resisting an Officer with Violence (Count 4). (Doc. 16, Ex. A, pp. 1-2).[2]  The arrest affidavit described the incident as follows:

> On Dec 26, 2002 at app 8:37 PM the defendant was driving a 2003 Volks GTI on SR- 8A near Davis Hwy.  The defendant did observe a marked FHP patrol car attempt to stop him for unlawful speed.  The defendant made a quick exit off SR-8, accelerated to a high rate of speed on Brent Lane and turn[ed] off his headlamps to avoid apprehension.

> Mr. Powell drove through the parking lot of Food World on Davis Hwy with his headlights off.  He then parked and went into the Food World Store with his passenger.  Officer Mike Miller with ECSO #234 was off duty and a witness to the entire incident.

> Trooper Wright stopped Mr. Powell's vehicle as he was turning onto Davis Hwy from Food World.  Mr. Powell resisted arrest and fled again from Trooper Wright.  Trp. Wright was attempting to arrest Mr. Powell and was dragged app 300 feet down Davis Hwy by his vehicle. He fell to the street with multiple abrasions/contusions to his arms, leg and torso.  He was transported to West Florida Hospital for treatment.

> A computer check of Mr. Powell's Florida ID did indicate he had multiple suspensions for fail[ing] to pay citations and one felony revocation 5 years for habitual traffic violation.

(*Id.*, pp. 3-4).

---

[2]Hereafter all references to exhibits will be to those attached to Doc. 16 unless otherwise noted.

On May 19, 2003, petitioner wrote a letter to the trial court in which he explained his side of the story.  Petitioner acknowledged that he drove with his license revoked and that he committed the fleeing and eluding.  (Ex. A, p. 190-94).

On May 27, 2003, petitioner appeared in court with counsel.  Defense counsel informed the trial judge that "after extended discussions over a period of time" petitioner had "decided that it would be in his best interest to enter a plea of no contest to each of the charges straight up and request a PSI."  (*Id.*, p. 6).  The trial judge advised petitioner of the minimum and maximum penalty he could receive if he pleaded no contest to all of the charges.  (*Id.*).  The judge also clarified with petitioner his understanding that petitioner did not want to enter into a plea agreement – that petitioner was instead "pleading and taking [his] chances . . . on going down on the sentence or going up on the sentence."  (*Id.*, p. 7).  The court further inquired whether petitioner had discussed his decision with his attorney, whether he had discussed the "advantages and disadvantages" of his decision, and whether petitioner understood that pleading no contest "means the same thing as pleading guilty."  Petitioner responded yes to all of these questions.  (*Id.*, p. 8).  When asked a final time whether he "want[ed] to enter a plea without an agreement knowing those are the guidelines," petitioner unequivocally stated, "Yes, sir."  (*Id.*, p. 8).  Petitioner then  entered a no contest plea to each of the charges.  (*Id.*, pp. 8-9).

On July 10, 2003, petitioner appeared for sentencing.  Prior to adjudicating him guilty and imposing sentence, the judge noted the charges to which petitioner was pleading no contest, commenting that this was "an extremely, extremely serious case.  (*Id.*, p. 15).  The court stated:

> [THE COURT]:  Mr. Powell has no license.  It's been violated because of his  prior driving offenses, and he doesn't care and he's going to drive anyway.  And in this particular case, he drug a police officer 300 feet trying to get him to stop, drug him.
>
> THE DEFENDANT:  No, sir.
>
> THE COURT:  Yes, sir.  That's exactly what happened.

**THE DEFENDANT:  No, sir.**

(*Id.*, pp. 15-16).

The court said it did not have any information on the extent of injuries, even with the PSI.  The prosecutor noted that Trooper Wright's deposition should be in the court file.  He explained that Trooper Wright suffered permanent damage due to the incident, that he had been removed from patrol duties due to his injuries and was on light duty.  (*Id.*, p. 17).  The prosecutor also indicated that petitioner was going 103 m.p.h. on the highway, and that petitioner was under a "habitual traffic offender suspension" when this occurred.  (*Id.*).  Finally, the prosecutor noted that only Trooper Wright's utility belt prevented him from being dragged under the car as petitioner dragged him down Davis Highway.  The prosecutor asked for a "lengthy period of incarceration."  (*Id.*).

Defense counsel pointed out that letters had been filed in support of petitioner.  Counsel argued the petitioner's scoresheet points were high because of the seriousness of the offenses, but petitioner had little prior record.  These events were an aberration in petitioner's life and should be considered in that light.  Counsel asked that the court not go too far beyond what was required by law.  The court responded, "What's required by law is up to 55 years."  Defense counsel stated, "that's permitted by law," "not necessarily required."  (*Id.*, p. 18).

After further discussion, the court asked petitioner if there was anything he wanted to say.  Petitioner gave his version of the incident leading to his arrest.  Most notably, petitioner denied any intent to harm Trooper Wright, contending that he drove away only to escape abuse from the off-duty officer on the scene.  (*Id.*, pp. 20-21).[3]   Petitioner acknowledged that he was driving after his license had been

---

[3]Petitioner stated that after he pulled off the highway, an off-duty officer in a truck (ESCO Investigator Miller) tailed him to the Food World parking lot.  After petitioner left the parking lot and once Trooper Wright had pulled him over, there was "no aggression on my part or his part."  (*Id.*, pp. 19-20). Wright was getting petitioner's registration, insurance, and petitioner was complying with him. Miller pulled up, got out of the truck, and "basically pushed Officer Wright to the side and started using obscenities towards me."  (*Id.*, p. 20).  According to petitioner, Miller threatened that if petitioner

suspended (*id.*, pp. 21-24), and further acknowledged that he fled when Trooper Wright attempted to pull him over for speeding.  (*Id.*, p. 27).

The court adjudicated petitioner guilty and sentenced him to fifteen years imprisonment on Count 1, concurrent five-year terms of imprisonment on Counts 2 and 4 to run concurrently with Count 1; and a five-year term of imprisonment on Count 3 to run consecutively to Count 1.  (*Id.*, pp. 15-34, 37-43).

Petitioner timely appealed to the Florida First District Court of Appeal ("First DCA").  (Ex. B).  Petitioner's appointed appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), asserting that she was unable to make a good faith argument that reversible error occurred in the trial court.  (Ex. C).  As the *Anders* procedure requires, counsel did note in her brief

---

did not cooperate, he would charge him with obstruction of justice.  Petitioner then explained the circumstances surrounding his driving off:

> When I leaned forward to grab my license, he came in the car, and so did Trooper Wright, through . . . the driver's side window. . . . They were restraining me, both of them.  Trooper Wright had my hands, and the other officer ripped the earring out of my ear and had a hold of my head. He was basically beating me.  My foot came off the accelerator because of the clutch – I mean, the brake because of the clutch, and the car rolled down the embankment.

> At that time, the officer that had jumped in the car that was off duty stated that he – that the car was in motion, and they both jumped out of the car.  I didn't know that . . . Officer Wright had either grabbed the handle on the car or he had you know, gotten caught up on the car because he was not inside the car.  I did not see him.

> I just did not want to be beaten. . . . I didn't not want to be beaten up any more. And I had full intentions of turning myself in, but I just didn't – I didn't want to stay there and risk being hurt more or beaten more.

> And I'm totally . . . sorry about what happened to Officer Wright . . . I do . . . I mean, I have total – I feel remorse, but it's not something that I intentionally and consciously did.  He was not standing in front of the car trying to stop me.  He was not . . . in the window hanging out of the car.  He as at – he was outside of the car.

> The officer shows in the depositions that the officer off duty snatched him out of the car as well. . . . So that could have caused him to be caught; I don't know.  I mean, I'm not a lawyer.  But I know I did not intentionally try to hurt anyone.  I mean, that's not what I do.  That's not my nature.  And I do apologize.

(*Id.*, pp. 20-21).

that there were two possible issues that might be worth consideration:  "Plea colloquy" and "Should court have asked appellant if he wanted to withdraw plea?" (*Id.*, pp. 7, 9).  Petitioner was invited by the appellate court to file a brief (ex. D), but he did not (ex. E), and the court affirmed his convictions and sentences per curium without written opinion.  *Powell v. State*, 875 So.2d 1245 (Fla. Dist. Ct. App. 2004) (Table) (copy at Ex. A, pp. 72-73).

On August 11, 2003, petitioner filed a motion for reduction and modification of sentence under Florida Rules of Criminal Procedure 3.800(c).  (Doc. 1, p. 2).  The trial court denied relief on September 23, 2003.  (*Id.*).  Petitioner did not seek review of the denial order.  (*Id.*).

On January 6, 2004, petitioner filed a motion to correct sentencing error under Florida Rules of Criminal Procedure 3.800(b)(2), arguing that the written judgment and sentence did not conform to the oral pronouncement, and that he was entitled to have his credit for time served corrected to 197 days in jail.  (Doc. 16, Ex. A, pp. 45-50).  The trial court granted relief on January 13, 2004, and the judgment and sentence were corrected to reflect 197 days of credit for time served on Counts 1, 2 and 4.  (*Id.*, pp. 51-52).

On January 21, 2005, petitioner filed a motion for post-conviction relief under Florida Rules of Criminal Procedure 3.850.  (Doc. 16, Ex. A, pp. 74-85).  The motion alleged two grounds of ineffective assistance of trial counsel: (1) counsel's allowing petitioner to plead to the offenses "despite the fact that there was inadequate factual basis to substantiate these offenses," (*id.*, pp. 75-76), and (2) counsel's failure to inform petitioner "that he would be accepting a plea for which he would be admitting that he intentionally hurt the officer in this case, and was thus guilty of Aggravated Battery on a Law Enforcement Officer, and Resisting Arrest with Violence," (*id.*, p. 79).  The trial court granted an evidentiary hearing, and petitioner was appointed counsel.  (*Id.*, pp. 88-89).  After the hearing the trial court denied relief on both claims.  (*Id.*, pp. 175-250).  Petitioner appealed, arguing that the denial of relief was

erroneous.  (Ex. F).  On October 31, 2006 the First DCA affirmed the denial order without written opinion.  *Powell v. State*, 940 So.2d 1129 (Fla. Dist. Ct. App. 2006) (Table) (copy at Ex. I).  The mandate issued November 16, 2006.

Petitioner filed his federal habeas corpus petition on April 4, 2007.  (Doc. 1, p. 1).  His amended petition was filed on June 19, 2007.  (Doc. 13, p. 1).  Respondent concedes the petition is timely.  (Doc. 16, pp. 6-7).


## LEGAL STANDARDS

### Section 2254 Standard of Review

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.  In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2008).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[4]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); *Ramdass v. Angelone*, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a

---

[4]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

particular result in the case."  *Neeley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by Parker v. Head*, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  *Lockyer*, 538 U.S. at 73 (quoting *Williams*, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting *Williams*, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  *Williams*, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it.  *Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was

contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).  The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion."  *Williams*, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g. Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); *Jones v. Walker*, 469 F.3d 1216, 1226-27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See Panetti v. Quarterman*, --- U.S. --- 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); *Jones*, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

## Exhaustion and Procedural Default

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[5] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan, supra*, 513 U.S. at 365-66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Picard*, 404 U.S. at 277-78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In *Picard*

---

[5]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A)  the applicant has exhausted the remedies available in the courts of the State; or

(B) (i)  there is an absence of available State corrective process; or

(ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

*v. Connor*, *supra*, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.* at 278, 92 S.Ct. at 513, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  In *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  *Id.* 459 U.S. at 7, 103 S.Ct. at 278 (citing *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)).  The only manner in which the habeas petitioner had cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  *Anderson*, 459 U.S. at 7, 103 S.Ct. at 278 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the <u>cited</u> case advanced a federal claim.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  459 U.S. at 7 and n. 3, 103 S.Ct. at 278 and n. 3.

Years later, the Supreme Court readdressed the "fair presentation" requirement in *Duncan v. Henry*, *supra*.  The *Duncan* Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law

overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[6]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." *Duncan*, 115 S.Ct. at 888.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004).  The *Baldwin* Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  *Id.*  This language, while not part of the Court's holding, provides an instructive and useful rule of thumb.  With regard to this statement, the Eleventh Circuit stated in *McNair v. Campbell*, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"  *McNair* [*v. Campbell*], 315 F. Supp. 2d at 1184 (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

---

[6]The petitioner in *Duncan* raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

*Id.*, 416 F.3d at 1302-03 (citations omitted).[7]

The Eleventh Circuit, prior to *Duncan*, had broadly interpreted the "fair presentation" requirement.[8]  However, after *Duncan*, the Eleventh Circuit has taken a more restrictive approach.  For example, in *Zeigler v. Crosby*, the Circuit Court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the Federal Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003).  The court specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Florida Constitution and Florida's Due Process Clause.  *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to

_____

[7]In his initial brief before the Court of Criminal Appeals, the petitioner cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." *McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  *Id.*

[8]*See, e.g., Watson v. Dugger*, 945 F.2d 367 (11th Cir. 1991) (finding issue to be exhausted when petitioner argued in state court that trial court misapplied state law when it refused to give petitioner's requested jury instruction and thereby allowed the jury to convict without necessary showing of criminal intent, and argued in federal court that this was a due process violation); *Mattox v. Dugger*, 839 F.2d 1523 (11th Cir. 1988) (holding that a federal habeas corpus petition should not be dismissed on grounds of procedural default when a petitioner has previously brought an issue before a state court alleging only state law violations, when such a claim is equally supported by federal law, and the state cites such federal law in support of its position); *Hutchins v. Wainwright*, 715 F.2d 512, 518-19 (11th Cir. 1983) (petitioner exhausted Sixth Amendment confrontation clause claim in state court by raising hearsay objections, even though petitioner never raised Sixth Amendment claim in state court).

federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.*, procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S.Ct. at 1734; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Bailey*, 172 F.3d at 1303. In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See Harris v. Reed*, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L.Ed.2d 820 (2002). The adequacy requirement has been interpreted to mean that the rule must be firmly established and regularly followed, that is, not applied in an "arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001), or in a manifestly unfair manner. *Ford v. Georgia*, 498 U.S. 411, 424-25, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim. *Tower*, 7 F.3d at 210; *Parker*, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. *Tower v. Phillips, supra.* To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 85, 130 L.Ed.2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

## PETITIONER'S GROUNDS FOR RELIEF

Petitioner presents four grounds for relief, all challenging the constitutionality of his plea on the grounds that it was obtained either in violation of procedural due process or in violation of his right to the effective assistance of counsel.

Ground 1.    <u>Petitioner's plea was not knowing, intelligent or voluntary, in violation of the Fourteenth Amendment, due to the state trial court's failure, during the plea colloquy, to obtain a knowing, intelligent, voluntary waiver of petitioner's constitutional rights.</u> (Doc. 13, pp. 4-19).

Petitioner contends his plea violates Federal due process standards because the trial court failed "to obtain an affirmative, knowing, intelligent, voluntary waiver of petitioner's fundamental constitutional rights to trial by jury, cross-examination and confrontation, and against self-incrimination." (Doc. 1, p. 5). Petitioner states the issue was presented to the state court on direct appeal in appellate counsel's *Anders*[9] brief. (*Id.*, pp. 11-12). Respondent contends petitioner procedurally defaulted this claim. (Doc. 16, pp. 10-14). Respondent is correct.

In the *Anders* brief, appellate counsel identified two issues: "Plea colloquy" and "Should court have asked appellant if he wanted to withdraw plea?" (Doc. 16, Ex. C, pp. 7, 9). Under the "Plea colloquy" issue, counsel asserted:

> Rule 3.172 governs the acceptance of pleas of guilty or nolo contendere. Paragraph c) requires that the judge "place the defendant under oath and . . . address the defendant personally and . . . determine that he understands," inter alia, (1) the maximum possible penalty; (2) the rights to a trial by jury with representation by counsel, to compel the attendance of favorable witnesses, and to confront and cross-examine adverse witnesses; and (3) that the plea waives the right to trial and appeal. In light of what happened at Powell's sentencing, it should be obvious that the defendant must also understand what crimes he is pleading to.

(Ex. C, p. 7). Counsel urged the court to consider "whether the colloquy here complied with the requirements of Rule 3.172." Counsel did not, however, assert that the plea should be set aside, "because [petitioner] did not move to withdraw the plea and could be subjected to a more severe punishment if the plea were withdrawn." (*Id.*). Recognizing the well-settled rule of Florida procedure that a defendant wishing to challenge on direct appeal the voluntariness of his no contest plea must first move in the trial court to withdraw the plea, counsel stated,

> As appellant did not move to withdraw his plea, appellate counsel is unwilling to assume from a silent record that appellant wants his plea vacated.
> . . .

---

[9] *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L..Ed.2d 493 (1967).

> Appellant should be given the opportunity to file a brief alleging reasons for wanting to withdraw his plea, or reasons why the plea is invalid. Appellate counsel cannot do so in good faith.

(*Id.*, p. 8). The appellate court gave petitioner an opportunity to file a *pro se* brief. (Ex. D). Petitioner declined to do so.

Even making the general assumption that a petitioner <u>can</u> exhaust a claim by raising it in an *Anders* brief,[10] and even further assuming (without deciding), that the issue identified in appellate counsel's *Anders* brief was the same Federal due process claim petitioner now presents (as opposed to a state law claim based on violation of Florida's procedural rule), petitioner procedurally defaulted his due process claim because the appellate court rejected it on the independent and adequate state ground of procedural bar.

In Florida, there are generally two ways to present a claim that a no contest plea should be set aside because it was involuntary: the defendant may file a motion to withdraw the plea within thirty days after rendition of the sentence, pursuant to Florida Rules of Criminal Procedure 3.170(l); or he may file a motion for post-conviction relief pursuant to Florida Rules of Criminal Procedure 3.850. A claim that a no contest plea was involuntary cannot be raised on direct appeal unless the issue was preserved by a motion to withdraw plea. Fla. R. App. P. 9.140(b)(2)(A)(ii)(c); *Griffin v. State*, 820 So.2d 906, 912-13 (Fla. 2002) ("This Court has consistently required that, in order to challenge the voluntariness of a plea on appeal, the defendant first move to withdraw the plea at the trial court."); *State v. Thompson*, 735 So.2d 482 (Fla. 1999) (holding that issue of voluntariness of plea is not subject to direct review unless the defendant has first moved in the trial court to withdraw his plea); *see also Robinson v. State*, 373 So.2d 898, 902 (Fla. 1979) (holding that even issues that <u>may</u> be the proper subject of direct appeal cannot be raised on appeal unless the defendant has first moved in the trial court to withdraw his plea:

---

[10] The Eleventh Circuit has held in an unpublished decision that an adjudication of a claim presented in an *Anders* brief can satisfy the exhaustion requirement, *see Jenkins v. Bullard*, 210 Fed. Appx. 895, at *2 (11th Cir. Dec. 13, 2006) (Table, text in Westlaw). That case did not involve claims that were procedurally barred from review by the appellate court.

"[A]n appeal from a guilty plea should never be a substitute for a motion to withdraw a plea.  If the record raises issues concerning the voluntary or intelligent character of the plea, that issue should first be presented to the trial court in accordance with the law and standards pertaining to a motion to withdraw a plea.  If the action of the trial court on such motion were adverse to the defendant, it would be subject to review on direct appeal."); *Gafford v. State*, 783 So.2d 1191, 1192 (Fla. Dist. Ct. App. 2001) (holding that "[f]ailure to file a motion to withdraw the plea within 30 days waives the issue for appellate review, and the defendant is limited to filing a motion pursuant to Florida Rules of Criminal Procedure 3.850"); *Smith v. State*, 590 So.2d 32, 33 (Fla. Dist. Ct. App. 1991) ("In the absence of a motion to withdraw a plea, an appellate court has no jurisdiction to review the character of the entry of the plea.").

This case is indistinguishable from the case of *Andrade v. State*, 905 So.2d 942 (Fla. Dist. Ct. App. 2005).  There, appellate counsel filed a brief pursuant to *Anders*, urging the court to review the sufficiency of the plea colloquy under Fla. R. Crim. P. 3.172.  The defendant declined to file a *pro se* brief.  The appellate court affirmed the conviction as follows:

> Having reviewed the record, we find that no issue of arguable merit appears.  We note, however, that the plea colloquy conducted by the trial court fell far short of the requirements set out in Florida Rule of Criminal Procedure 3.172.  Appellant is, however, without ability to assert an involuntary plea as an issue on appeal, because neither he nor anyone on his behalf filed a motion to withdraw the plea.  *See Gafford v. State*, 783 So.2d 1191, 1192 (Fla. 1st DCA 2001) ("Failure to file a motion to withdraw the plea within 30 days waives the issue for appellate review, and the defendant is limited to filing a motion pursuant to Florida Rule of Criminal Procedure 3.850.").

*Andrade*,  905 So.2d at 942-43.

Petitioner argues that the First DCA's affirmance of his conviction, rather than a dismissal of the appeal, demonstrates that the appellate court considered the voluntariness issue on the merits.  He further argues that state law and the *Anders* procedure required the appellate court to conduct a merits review of the issues raised in the *Anders* brief.  (Docs. 13, 23, 25).  However, an appellate court's summary affirmance under these circumstances in no way implies that it reviewed

the issue on the merits and declined to impose the procedural bar. *See, e.g., Coogle v. State*, 811 So.2d 782, 783 (Fla. Dist. Ct. App. 2002) (affirming conviction without reaching merits of issue identified in *Anders* brief that defendant's plea was not knowingly entered; holding that defendant failed to preserve issue for appellate review where he failed to file motion to withdraw plea); *Thiel v. State*, 793 So.2d 115 (Fla. Dist Ct. App. 2001) (affirming conviction and holding that defendant, who claimed he did not voluntarily and intelligently enter his guilty plea, was precluded from raising the issue on direct appeal because he failed to first move in the trial court to withdraw his plea); *Lopez v. State*, 801 So.2d 200 (Fla. Dist. Ct. App. 2001) (same); *Hall v. State*, 765 So.2d 282 (Fla. Dist. Ct. App. 2000) (affirming conviction and holding that defendant's claim that the trial court imposed a sentence which exceeded the plea agreement was not cognizable on direct appeal because defendant failed to file a motion to withdraw his plea; "We affirm as this issue has not been preserved.").

This court cannot presume that a Florida court has ignored its own procedural rules and reached the merits of a case when the court issues a summary denial of relief, i.e., an unexplained decision. Such a ruling does not suggest that the state court resolved the issue on the federal claim presented. *See Coleman*, 501 U.S. 722, 735-36 (1991); *Kight v. Singletary*, 50 F.3d 1539, 1544-45 (11th Cir. 1995) (applying procedural bar where state court's summary denial did not explain basis for ruling; "Where, as here, a clearly meritorious claim is procedurally barred and the state court denies relief without opinion, the most reasonable assumption is that . . . the state court . . . enforced the procedural bar.") (internal quotation marks and citation omitted); *Tower v. Phillips*, 7 F.3d 206, 209 (11th Cir. 1993) (applying procedural bar where state court did not rule on claims presented). Based on the foregoing, the undersigned concludes that in summarily affirming petitioner's conviction, the state appellate court enforced the procedural bar (petitioner's failure to preserve the issue for appellate review by first moving to withdraw his plea). Petitioner can no longer return to state court to present this federal claim, as the state trial court no longer has jurisdiction to entertain a motion to withdraw plea. Further, the state's

procedural rule precluding a second or successive Rule 3.850 motion bars petitioner from returning to state court to present his due process claim in a second Rule 3.850 motion.  Consequently, this claim is procedurally defaulted.[11]

Petitioner attempts to overcome the procedural default by contending that a conflict of interest precluded his trial counsel from filing a motion to withdraw plea, because "[f]or counsel to do so, counsel would be placing himself in jeopardy of disciplinary action for ethical violations."  (Doc. 13, p. 18).  This argument should be rejected.

First, although Florida law provides that once a defendant indicates his desire to avail himself of Fla. R. Crim. P. 3.170 and file a motion to withdraw his plea the trial court must appoint conflict-free counsel to advise and assist him, *see Mullins v. State*, 981 So.2d 1281 (Fla. Dist. Ct. App. 2008), the petitioner here alleges no facts to suggest that he indicated to trial counsel or the court that he desired to withdraw his plea.  Indeed, petitioner admitted at the Rule 3.850 evidentiary hearing that he neither mentioned nor discussed with trial counsel withdrawing his plea.  (Ex. C, pp. 137-40).[12]  Although petitioner discussed it with law clerks at the prison, he took no action to withdraw his plea.  The foregoing demonstrates that the absence of a motion to withdraw plea was attributable to petitioner's inaction, not a conflict of interest on trial counsel's part.

---

[11]Respondent contends, and petitioner does not dispute, that petitioner's Rule 3.850 motion was premised on claims of denial of petitioner's Sixth Amendment right to counsel as a result of ineffective assistance of trial counsel.  Although petitioner mentioned *Boykin v. Alabama*, 395 U.S. 238 (1969) in one of the grounds for relief (ex. A, p. 82), it is clear that both claims relied on the Sixth Amendment and *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) standard for resolution of the claim, rather than the standard applicable to due process violations.  The Rule 3.850 court expressly resolved the motion under the *Strickland* standard.  (Ex. A, pp. 74-250).  Moreover, the Federal due process claim concerning the trial court's failure to ascertain petitioner's knowing waiver of his rights to a jury trial, to confront adverse witnesses, and to remain silent is separate and distinct from petitioner's ineffective assistance claims based on counsel's failure to ensure a factual basis for the plea and failure to ensure that petitioner understood he was entering a plea to an intentional crime.

[12]Trial counsel confirmed that petitioner never indicated to him a desire to withdraw his plea. (Ex. A, p. 114).

Second, petitioner did not raise this particular ineffective assistance claim in his Rule 3.850 motion.  In that proceeding, his claims were based on counsel "allowing the Defendant to plea to offenses for which there was not adequate factual basis" (ex. C, p. 75), and "failing to inform the Defendant that he would be accepting a plea for which he would be admitting that he intentionally hurt the officer in this case." (*id.*, p. 79).  (*See also id.*, p. 176).  Petitioner did not claim that counsel was ineffective for failing to file a motion to withdraw plea on the grounds that the trial court did not ascertain that petitioner understood the constitutional rights he was giving up.  As petitioner is barred by state procedural rules from raising this ineffective assistance claim in a second or successive Rule 3.850 motion, the issue is procedurally defaulted.  Petitioner has not shown cause for defaulting this issue in state court.  Therefore, counsel's ineffectiveness for failing to move to withdraw petitioner's plea cannot be considered cause for the default of petitioner's Federal due process claim. *Edwards v. Carpenter*, 529 U.S. 446, 450-51, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000) (concluding that a federal habeas court is barred from considering a procedurally defaulted ineffective assistance of counsel claim as cause for procedural default of another claim; "[A] procedurally defaulted ineffective-assistance-of-counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective assistance claim itself."); *see e.g., Henderson v. Campbell*, 353 F.3d 880 (11th Cir. 2003) (holding that habeas petitioner's procedurally defaulted claim (that undue influence of post-conviction counsel caused him to procedurally default his ineffective assistance claims raised in state post-conviction proceeding) could not establish cause and therefore could not excuse his procedural default of the ineffectiveness claims; petitioner had an opportunity to raise the undue influence issue in either a post-judgment motion in the post-conviction court or in his appeal from dismissal of the post-conviction proceeding to the Alabama Court of Criminal Appeals, or both).

Because petitioner has failed to excuse his procedural default of Ground 1 of the amended petition, this court will not review it.

**Ground 2.     Did the trial court [err] in failing to allow defendant to withdraw his plea when the fa[c]tual basis was denied.  (Doc. 13, pp. 19-23).**

Petitioner contends the trial court erred "by failing to conduct an inquiry to insure the petitioner understood the nature of the offense he was pleading to."  In support of this claim, petitioner alleges that at the plea hearing, neither the court nor the state provided a factual basis for the charge of aggravated battery upon a law enforcement officer.  At sentencing, when the trial court discussed the factual basis with petitioner (i.e., that petitioner had "drug" Trooper Wright 300 feet), petitioner denied that he intended to cause harm to the Trooper.  According to petitioner, the trial court should have inquired whether petitioner understood he was pleading to an intentional crime.  "That inquiry, petitioner asserts would have resulted in an opportunity to withdraw his plea if he chose to do so."  (Doc. 13, p. 22).  Petitioner contends he exhausted this claim by appellate counsel discussing it in her *Anders* brief on direct appeal.  (Id., pp. 22-23).  Respondent adopts the same arguments presented in his answer to Ground 1 above, arguing that this claim is procedurally defaulted.  (Doc. 16, p. 15).  Respondent is correct.

Appellate counsel identified this claim in Issue 2 of her *Anders* brief.  As discussed above, petitioner failed to preserve this claim of trial court error for direct review by failing to first move in the trial court to withdraw his plea.  This court will not presume from the appellate court's unexplained affirmance that it ignored the procedural bar.  Thus, the claim is considered procedurally defaulted.  Petitioner has made none of the requisite showings to excuse his default.  Therefore this court will not review the claim.

**Ground 3.     Trial counsel was ineffective for allowing the petitioner to enter a plea of no contest where there was not a factual basis.  (Doc. 1, pp. 23-25).**

In Ground 3, petitioner contends his trial counsel was ineffective because he allowed petitioner to plead no contest to the charge of aggravated battery upon a law enforcement officer, knowing that there was not a sufficient factual basis to support

the necessary element of intent.[13]  In support, petitioner alleges that he contended all along to counsel that he had not intended to harm Trooper Wright and this provided him with a viable defense.  Nonetheless, trial counsel urged him to plead guilty.  At the plea hearing, no factual basis for any of the charges was recited into the record, and at the sentencing hearing when the trial court discussed some of the facts supporting the charge, petitioner asserted that he had not intended to harm the Trooper.  Petitioner argues that in light of his denial of intending to harm Trooper Wright, the trial court lacked a sufficient factual basis to support the element of intent.  Petitioner claims he was prejudiced by counsel's error because such error "allowed the petitioner to plea to felony offenses not substantiated by factual basis and allowed him to be sentenced to an extended period of incarceration for offense he denied the factual basis to."  (Doc. 13, p. 25).  Petitioner states he exhausted this claim by presenting it to the state court as Ground One of his Rule 3.850 motion.  (*Id.*, p. 25).  Respondent agrees that the claim is exhausted, but contends petitioner is not entitled to habeas relief because the state court's denial of relief was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.  (Doc. 16, pp. 16-22).

A.     Clearly Established Federal Law

When a prisoner contends that ineffective assistance of counsel led him to enter an improvident guilty or no contest plea, courts apply the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990) (citing *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985)).  Under *Strickland*, in order to prevail upon a claim of ineffective assistance of counsel the petitioner must prove that:     (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for  counsel's

---

[13]Petitioner's only point of contention is with regard to his intent to harm Trooper Wright.  He does not contest the adequacy of the factual basis for the aggravated fleeing count, the driving on a revoked license count, or the resisting officer counts, none of which required intent to harm the officer.  Even if he did challenge the factual bases for these charges, the record demonstrates that an adequate factual basis existed to support each charge.

unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. 668 at 694, 104 S.Ct. 2052.

In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance. *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000). Hence, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *Tejada v. Dugger*, 941 F.2d at 1559; *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977)). Further, in evaluating the reasonableness of counsel's actions, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. A court's review is objective, in that the court considers "whether there was any reasonable justification for the attorney's conduct." *Newland v. Hall*, 527 F.3d 1162, 1184 (11th Cir. 2008) (citing *Chandler* at 1315). Thus, the petitioner "must establish that no competent counsel would have taken the action that his counsel did take." *Chandler*, at 1315.

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than simply that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." 466 U.S. at 693, 104 S.Ct. at 2067. Instead, the petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, at 694, 104 S.Ct. at 2068. As the Court further explained in *Hill*:

> In the context of guilty pleas, . . . [t]he second, or "prejudice" requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill*, 474 U.S. at 58-59. Without support in the record, bare allegations that the petitioner was prejudiced by counsel's performance are not sufficient. *Smith v.*

*White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).  In applying *Strickland*, the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs.  466 U.S. at 697, 104 S.Ct. at 2069.

>    B.    Federal Review of State Court Decision

In state court, an evidentiary hearing was held on this claim.  Petitioner was represented by appointed counsel.  Two witnesses testified:  petitioner's trial counsel Frederick Carmody and petitioner.  After the hearing the court issued an order denying relief.  The state court correctly identified *Strickland* as the controlling legal standard.  It explained that it had reviewed the record, including:  (1) petitioner's pre-plea letter to the trial court, (2) the deposition transcripts of the two law enforcement officers involved in the incident, both of which were before the trial court at the time of petitioner's plea, (3) the transcripts of the plea and sentencing proceedings, and (4) the evidence adduced at the Rule 3.850 evidentiary hearing.  The court concluded that petitioner was not entitled to relief, explaining:

>    A review of the record leads the Court to conclude that an adequate factual basis for the charges <u>did</u> exist at the time of the plea, and that counsel appropriately discussed the element of intent with Defendant.  Because Defendant does not allege that any of the other elements of the offenses charged were lacking, the Court will focus its inquiry on the question of intent.

>    The Court is cognizant of Defendant's unwavering argument that he did not intend to harm the officer in question, but that is not the legal definition of intent.  Indeed, if Defendant had elected to proceed to trial, it is most probable that the jury would have been instructed that Defendant's intent was a question of fact for the jury to determine.  "Intent, being a state of mind, is often not subject to direct proof and can only be inferred from circumstances."  <u>Jones v. State</u>, 192 So.2d 285, 286 (Fla. 3rd DCA 1966).

>    In the letter . . . Defendant admitted to the fleeing and eluding and driving while his license was revoked.  Additionally, the depositions of the officers support the charges of resisting arrest with violence and aggravated battery on a law enforcement officer, including circumstances which could support a jury finding that Defendant had the requisite criminal intent.  Therefore, the Court finds no prejudice in counsel's failure to object to a lack of finding of factual basis on the

record, as the record contains ample material supporting a finding that a factual basis existed at the time of the plea.

(Ex. A, pp. 178-79) (footnotes omitted).

The state court's factual findings are presumed correct and are amply supported by the record. The undersigned has independently reviewed the state court record and finds, as the Rule 3.850 court did, that the circumstances of the incident as described in FHP Trooper Wright's deposition testimony (ex. A, pp. 196-208), and ESCO Investigator Miller's deposition testimony (*id.*, pp. 211-30), provided sufficient facts from which a jury could conclude that petitioner intentionally injured Trooper Wright in an attempt to evade capture. Thus, a sufficient factual basis for petitioner's plea existed, regardless of whether it was recited into the record at the time of the plea. Petitioner was well aware of these facts prior to entering his plea.[14] His denial that he intended to harm Trooper Wright does not alter the conclusion that a factual basis existed, nor does it nullify the facts supporting the charges. As respondent correctly points out, "[t]he sole purpose of the [requirement to establish a factual basis] is to determine the accuracy of the plea, thereby avoiding a mistake. The trial judge . . . is to ensure that the facts of the case fit the offense with which the defendant is charged." *Williams v. State*, 316 So.2d 267, 271 (Fla. 1975). The trial judge's task "is not to pass on the sufficiency of the evidence to support a conviction, but rather to determine that a 'factual basis' exists. . . . This means that the court makes inquiry as to the facts sufficient to satisfy itself that a prima facie basis exists for the charge against the defendant." *Wright v. State*, 376 So.2d 236, 238 (Fla. Dist. Ct. App. 1979). In sum, as long as the record shows that a prima facie basis for the charge exists, the factual-basis requirement in satisfied, regardless of whether the basis has been recited into the record at the plea hearing. *See, e.g., Monroe v. State*, 318 So.2d 571, 573 (Fla. Dist. Ct. App. 1975) (stating "plea may be accepted in spite of the defendant's protestation of innocence or his denial of an

---

[14]Counsel testified, and petitioner admitted at the Rule 3.850 hearing, that counsel went over the arrest report with petitioner and provided him with the law enforcement officers' depositions. (Ex. A, pp. 97, 99, 102, 116, 148-49).

essential element of the crime, if there is otherwise in the record matters from which the court may determine that there exists a factual basis for the plea.").

The foregoing establishes that had counsel done what petitioner alleges he should have done – ensured that either the court or the prosecution recited a factual basis for the plea on the record – the result would have been the same – the factual-basis requirement would have been satisfied and petitioner's plea accepted.  The state court's denial of relief on this claim was neither contrary to, nor an unreasonable application of clearly established Supreme Court precedent. Therefore, petitioner is not entitled to federal habeas relief.

> Ground 4.    **"Petitioner's plea of no contest was not knowingly and voluntar[ily] made based on petitioner's denial of intentional[ly] committing aggravated battery upon a law enforcement officer and resisting arrest with violence."** (Doc. 13, p. 26).

In his final ground for relief, petitioner faults trial counsel for failing to "assert[ ] the defensive theory voiced by the petitioner" that petitioner did not intend to harm Trooper Wright.  (Doc. 13, p. 26).  Petitioner believes this was constitutionally deficient because counsel knew that petitioner denied intending to harm Trooper Wright and that intent was an element of the aggravated battery charge.  Petitioner states that "[h]ad trial counsel asserted the defensive theory voiced by the petitioner, or requested a proper and complete colloquy to insure the petitioner's understanding of the offenses charged, the petitioner would have withdrawn his plea, entered a plea of not guilty, and continued to trial on the merits."  (*Id.*).  Petitioner asserts he exhausted this claim by raising it as Ground Two of his Rule 3.850 motion.  (*Id.*).  Respondent agrees that the claim is exhausted, (doc. 16, p. 23), but contends petitioner is not entitled to federal habeas relief because the state court's denial of relief was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.

> A.    **Clearly Established Federal Law**

The clearly established law with regard to this claim is set forth in Ground 3 above.

### B.    Federal Review of State Court Decision

In Ground Two of his Rule 3.850 motion, petitioner claimed trial counsel was ineffective for allowing him to enter his plea without an adequate understanding that intent was an element of aggravated battery on a law enforcement officer.  The state court denied relief as follows:

> As to defendant's second claim that he did not understand that he was pleading to a crime which included the element of intent, and that his counsel failed to properly apprise him of this fact, the Court concludes that Defendant was aware that intent was an element of the aggravated battery charge.  Defendant states in his own sworn motion that "counsel was very familiar with the facts of this case," and thus can make no argument that counsel was unfamiliar with "his side of the story."   Defendant also stated at evidentiary hearing that he had requested copies of the relevant statutes from the county jail library, and had reviewed the elements of the offenses for himself.  He further stated that he had discussed the statutes with his attorney and that they had disagreed over whether the elements could be met.
>
> Defendant's trial counsel, Frederick Carmody, testified at evidentiary hearing on the issue of whether Defendant understood the element of intent at the time of his plea.  It was clear form Mr. Carmody's testimony that Defendant has been steadfast from the day of his arrest that he did not intend to harm the police officer.  However, Mr. Carmody also testified that he informed Defendant of the elements of the crimes with which he was charged.  Counsel further advised him that, given his experience [with] the presiding trial court judge, it would not be advisable to go to trial unless he could "beat all of the charges."  Mr. Carmody further testified that he discussed with Defendant that intent could be inferred from behavior, and that the eyewitness (Defendant's passenger) gave a statement consistent with the deputy's version of events.   Mr. Carmody further stated that he informed Defendant that his passenger would not testify on Defendant's behalf, and played for Defendant a recording of his passenger's statements regarding the incident.   Mr. Carmody's overall impression of the evidence against Defendant was that it would not "play favorably" for the jury or the Court.
>
> According to Mr. Carmody, he discussed the elements of the crimes, including intent, with Defendant.  It was Mr. Carmody's opinion that Defendant did not <u>agree</u> with all of what he was told regarding how criminal intent was defined and proved at trial, but that Defendant understood the elements of the offenses and the legal definition of intent sufficiently to enter a knowing and intelligent plea.  Mr. Carmody

stated, "I am sure I discussed with him on each of the counts what the facts were that I was coming up with in deposition and from  him, and how that would cover the elements of the offense."

Accordingly, the Court finds that Defendant has failed to demonstrate deficient performance as to his claim that counsel was ineffective for failing to properly advise him that intent was an element of aggravated battery.  The Court finds Mr. Carmody's testimony credible, and finds that counsel discussed with Defendant that intent was an element of the crime, whether or not Defendant agreed with the way it is and was defined.  Defendant chose to enter his plea with knowledge of that fact, and therefore, is not entitled to relief on the basis of the instant motion.

(Ex. A, pp. 179-81) (footnotes omitted).

The undersigned has reviewed the transcript of the Rule 3.850 evidentiary hearing and finds that the above factual determinations are amply supported by the evidence adduced at that hearing.  Based on those facts, it was not objectively unreasonable for the state court to conclude that petitioner failed to establish deficient performance with regard to counsel ensuring that petitioner had a sufficient understanding of the nature and elements of the charged offenses (including the legal definition of intent) to enter a knowing and intelligent plea.  The facts further establish that counsel's advice concerning the viability of petitioner's

**"defensive theory" was not objectively unreasonable.[15]   Thus, petitioner fails to**

---

[15]As the state court summarized, counsel testified that from the outset of the case, petitioner maintained that he did not intend to harm Trooper Wright.  However, counsel explained  that "intent is not going to be determined at trial by [petitioner] saying that he didn't wish to cause the harm, but by observations of specific conduct."  (Ex. A, p. 111).  According to counsel, "from my first conversation on, I determined the extent to which he intended and the extent to which he knew the consequences that occurred."  (*Id.*, p. 110).  Counsel believed petitioner understood him when he explained how intent would be interpreted in a jury trial.  Still, "Mr. Powell felt that it was worth some consideration that he didn't wish any harm to anyone."  (*Id.*, p. 125).  Counsel reiterated his belief that petitioner <u>understood</u> the meaning of intent as it would be determined by a jury, he just didn't <u>agree</u> with it.  (*Id.*, pp. 125-26).  "[Petitioner] felt he deserved some consideration because there was no evil in his heart."  (*Id.*, p. 126).

In assessing the strength of the State's case, counsel obtained information from a number of sources including petitioner, the two law enforcement officers, and petitioner's passenger.  Petitioner related the incident to counsel as follows: "both of these officers were reaching inside the car, had a hold of him, they were handling him roughly.  The Deputy had grabbed him around the head and pulled his earring out.  He was being hurt.  And he popped the clutch and stepped on the gas."  (*Id.*, p. 117).  The officers' descriptions of the event were very damaging to petitioner.  Counsel provided petitioner with the deposition transcripts, expressing concern that "the facts as they played out in the [Trooper's] deposition had had an adverse effect on the State Attorney."  (*Id.*, pp. 101-02).  Specifically, after the State Attorney heard Trooper Wright's deposition, he revoked his plea offer of 6.1 years and told defense counsel he would not go lower than 10 years.  (*Id.*, p. 102).  Counsel believed the effect of those facts being played out at trial "would be far worse."  (*Id.*).  In addition to advising petitioner how damaging the officers' testimony would be, counsel informed petitioner that the eyewitness' testimony (petitioner's passenger) would not be favorable.  The statement counsel obtained from the passenger was more consistent with the officers' stories than with petitioner's story.  (*Id.*, p. 103).  Petitioner's passenger would not testify on petitioner's behalf with regard to petitioner's intent.  (*Id.*).  Counsel believed "that the jury determination, based on the conduct that the jury would hear, would not come out favorabl[y] to Mr. Powell."  (*Id.*, p. 112).

Defense counsel summed up his advise as follows:

I believe I told Mr. Powell that the plea offer [of 8 years] was in his best interest.  Mr. Powell, because of his inexperience in the system and not knowing the Judge, saw that as a very harsh sentence, as did I.  I still thought it was the best that we were going to get under the circumstances.

Mr. Powell and I also discussed what would happen if he went to trial, and he was going to lose on several of the counts anyway, and then all these facts that disturbed the State Attorney were going to play out to Judge Bell.  I thought that would be a further disadvantage on his part.

So the best option if he wouldn't take the plea agreement would be to plead straight up for a PSI, because he had led a pretty good clean life and the PSI could only be to his advantage.

. . . .

I didn't think the Judge was going to go where he went with [the sentence].  But in discussions between me and the State Attorney, the State Attorney believed the Judge would go higher than the offer he had made, and I believe I conveyed that to Mr.

Case 3:07-cv-00147-MCR-MD   Document 29   Filed 09/05/08   Page 32 of 33

establish deficient performance in this regard as well.

As a final note, respondent makes a valid point that petitioner appears to misunderstand the nature of a no-contest plea in that he believes he has admitted to intentionally harming Trooper Wright. "A plea of nolo contendere does not admit the allegations of the charge in a technical sense but only says that the defendant does not choose to defend." *Vinson v. State*, 345 So.2d 711, 715 (Fla. 1977). "It is merely a formal declaration that the accused will not contest the charges with the prosecutor." *Id.*; *see also North Carolina v. Alford*, 400 U.S. 25, 36 n. 8 (1970) ("Throughout its history, . . . the plea of nolo contendere has been viewed not as an express admission of guilt but as a consent by the defendant that he may be punished as if he were guilty and a prayer for leniency."). Petitioner's contention that his plea meant that he was "admitting that he intentionally hurt the officer" is false. Petitioner made no such admission by entering his plea. He simply declared that he would not contest the charges.

Based on the foregoing, the state court's denial of relief on this claim was neither contrary to, nor involved an unreasonable application of clearly established Federal law. Therefore, petitioner is not entitled to federal habeas relief.

Accordingly, it is ORDERED:

The clerk shall change the docket to reflect that Walter A. McNeil has been substituted as respondent in this cause.

And it is respectfully RECOMMENDED:

That the amended petition for writ of habeas corpus (doc. 13) challenging the convictions and sentences in *State of Florida v. Steven Bernarda Powell*, in the Circuit Court of Escambia County, Florida, case number 03-22, be DENIED and the clerk be directed to close the file.

---

Powell that the likelihood was the Judge would go higher.

(*Id.*, pp. 113-14).

**At Pensacola, Florida this 5th day of September, 2008.**

/s/ *Miles Davis*

**MILES DAVIS
UNITED STATES MAGISTRATE JUDGE**

<u>**NOTICE TO THE PARTIES**</u>

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**